The November Irwin Voice, Board Member. We need to make sure that Clearwater Commission desires absolute strawberries and not ranch or  …a police commander's duty is supreme.    Good morning, may it please the Court of Counsel, Mr. Clarity. My name is Cameron Clark. I have the privilege of representing the Blount in this case, Mr. Michael Donovan. At issue in this case is the decision of the Commission which rendered a determination that Mr. Donovan did not meet a burden of proof to establish that he sustained an accident that arose out of in the course of his employment. At the arbitration hearing in this matter, there were actually seven issues in dispute. When the arbitrator issued the decision, the arbitrator's conclusion of law may be finding that the petitioner did not sustain an accident that arose out of in the course of his employment and therefore all other issues were rendered moot. However, the arbitrator went on then to go ahead and do another legal conclusion regarding why penalties and attorney's fees were not warranted. A review was taken of the Commission on that matter. On appeal before the Commission, the parties in this case received a decision without having oral arguments. The Appellant filed a motion to recall when it was learned that the Commission had improperly documented the case as a nature and extent only hearing. Commissioner Gore at that time, who was the lead commissioner, agreed with my motion, recalled the decision and vacated it. The parties were allowed oral arguments and the Commission entered its second decision in this matter, affirming the arbitrator. I want to correct something. The arbitrator never found that he didn't have an accident. The arbitrator found that he failed to prove that he had an accident, his burden. It's entirely different. Do you want me to read it to you? He failed to prove that he had an accident arising out of the course of his employment. The arbitrator, you said that the arbitrator found that he didn't have one. That's an affirmative finding. The arbitrator found he failed to prove he did. That's different. Correct, and I'm arguing that that is, you're correct, Your Honor, that that finding is contrary to the law. In the arbitrator's finding, which was adopted, the decision was adopted by the Commission. It discusses the accident, what happened that day, what happened to Mr. Donovan, and then it goes into a full-blown medical causal connection argument. There's no separate decision or conclusion of the law in a heading under the arbitrator and the Commission's decision, meaning there was not a specific finding on accident and then causal connection. There's only accident arising out of the course of, finding all other issues are moot, but there's no other discrimination on why penalties and fees aren't warranted. I submit that the finding with respect to accident that Mr. Donovan did meet his burden of proof, because with respect to the in the course of, there is no dispute in this matter. The appellee in its brief agrees that the facts of the accident are undisputed. Well, let's assume that's true. There's an accident. It doesn't necessarily mean there's a causal connection between his condition about being in the accident, really, because he had an accident, correct? Well, I think in this, correctly, I think you have to first show, my position is if you have to show overall medical causal relationship under the auspice of the legal analysis of arising out of the course of. Wait a minute. You're entirely correct. The accident is different than the causation. They're entirely different concepts. Correct. This arbitrator found and the Commission adopted that he failed to prove accident. Failed to prove accident is what they found. And they relied on the testimony of Sacco and White. Correct. But might I submit that that's an error? Because the employer in this matter, in its brief, and before its arguments, everyone agrees. His supervisor, Mr. White, on cross-examined agreed that he knowingly sent Mr. Donovan out in loser-like conditions to do this install at a customer's house. There's no dispute that he was in the course of his employment that day, while driving a work vehicle for AT&T, coming into Pine Green, Illinois, traveling approximately 35 miles an hour, sees headlights coming at him, and has to take his car off to the side, goes down into a ditch. He testifies that he's getting bounced around like a bucking bronco. Inside the vehicle, calls Mr. White, tells him what happened. Mr. White calls, has him call Fleet. Fleet comes out, tows him out. Mr. White testifies he drives out to the scene. Mr. Donovan testifies he tried to drive the vehicle. It wouldn't drive properly. He pulled into a police station. Mr. White's testimony is that he lifted the hood of the car, of the work truck, and the entire engine compartment was compacted with snow. They call Fleet again. The truck has to be towed. Now, the arbitrator is finding, and the commissioner is finding, fight ball with Mr. Donovan, because they find that his testimony regarding a series of events not reliable compared to that as testified to by Mr. Sacco. Mr. Sacco never testified regarding the accident in this matter. The commission can't rely on Mr. Sacco's opinion when he never testified regarding the accident. So with respect to the analysis in the course of, the previews in the course of, arising out of and the risk, there was a risk distinctly associated with his employment. The supervisor admitted that. He only said about dangerous conditions. So what I personally think happened here is in, with respect to the arbitrator's decision, and then the subsequent affirmance by the commission, it was an arbitration decision, in my opinion, that was poorly directed. I don't see how you can't find that this is not a compensable work accident. Whether or not a claimant's alleged injury and current condition of well-being arose out of that is due to that accident as a medical causal connection analysis. Let's get down to more basics. Did the commission find that he failed to prove accident, or did the commission find that he failed to establish causation? Well, what they did say was the arbitrator does not find petitioner's testimony to be credible. All right? Failed to establish that he sustained a compensable injury on January the 30th, 2014. What does that mean? That he wasn't injured, or he wasn't involved, he didn't have an accident that arose out of him, of course. And the arbitrator says the exact same thing again on page 17 of the opinion, finds that the petitioner has failed to establish that he sustained a compensable injury at work on June the 30th. Now, either you're going to find that he sustained no injury, even though he had an accident, or you're going to find that he had no accident. Now, is there any doubt that the guy is hurt? In his record? That he was hurt? Yeah, he was injured. He had an injury of some kind. He had a three-level cervical fusion, I think. So he had a cervical fusion, so he only had some injury. Correct. The question becomes, they found that it wasn't a compensable injury. Now, does that mean there was no accident, or does that mean, although there was an accident, this injury is not causally related to that accident? One, I think to your point, Justice Hoffman, which is part of what was difficult for me in starting this case, there's not, I can understand if there's a decision by the commission with respect to accident, there's an accident that arose out of him, of course, in employment. If we move on to the next disputed issue, C, medical causal relationship, under the accident, under the only issue in the legal conclusions in the commission's decision, it only says with respect to the issue of accident. However, they do a full-blown medical causal relationship argument. So, again, I know this Court looks at the decision that the commission reached, not how they got there. So what I sort of want to read is, I can personally infer that they think that there's an accident, but based on our medical causal relationship... I think that's the only way you can read this. If you look at the fourth paragraph of the arbitrator's decision, he says, however, several facts are undisputed in this case. This truck had to be retrieved by a tow truck from a ditch. How do you read that as saying that the arbitrator concluded there was no accident? It would be an absurd reading. Well, the decision does not say that. No, the commission decision doesn't specifically say. Why? Because of the facts. She didn't come, it's like, that's the theme of the morning here. He's in a ditch, they had to retrieve it right away. I find there's an accident. I don't think you need to restate the obvious. I think what you're concerned is, Dr. McCulloch, attributing the claimant's condition to the normal degenerative process, a preexisting nothing to do with the accident. Correct. And causation is where you should be focusing. Correct. So with respect to the medical causation issue, Mr. Donovan testified that he made complaints of pain to his supervisor on at least three separate occasions between January 30th and February 21st. When was the first complaint? Pardon? When was the first complaint of injury? I believe it was around February 5th or 6th he testified to. Wasn't there also evidence that he presented at the tailgate meeting before work, that he took evasive action, he avoided an accident and walked away uninjured? I mean, if he's stating himself that he's uninjured at that point, isn't that pretty confusing? You're correct, Your Honor, in that that's the testimony of Eric White. And what took place that morning? Mr. Donovan himself testified that he was at that meeting, but he also admitted that his symptoms progressed following the accident and they progressively got worse. That is what is on the patient intake form when he first saw the neurosurgeon on February 21st. He took his car off the road and went into the district where the collision was. His symptoms progressed over a two- to three-week period, which is consistent with what his testimony was. Eric White's version of what was said and not said, I submit as suspect, because Eric White also testified that he said that the vehicle headlights coming to Mr. Donovan, that he could only see three feet away. If you're three feet away from a car at 30 miles an hour, you're not going to be able to avoid a head-on collision. There's conflicting evidence, admittedly. It's just this, what Barry's pointed out,  until he experienced stroke-like symptoms a couple of weeks later is a fact. But what do you make of the commission finding that Dr. McCulloch was the credible witness and they believed his testimony, the current condition of his well-being, was not causally connected to the accident? So what do we do with that? Well, with respect to that, Your Honor, to the first point regarding the stroke, the commission did find fault with Mr. Donovan and his wife, because when he went in for the stroke at Alexa Brothers on February 15th, he was taken by ambulance from a Reddy's parking lot. That, to me, is significant because Mr. Donovan had a stroke two years prior. The records show he had the exact same type of symptoms that he had from his prior stroke. The commission found fault with him because he didn't tell the doctors, oh, you're all wrong, this is all due to me going off the road. It was all apparent to them he was having a stroke because he's a previous stroke survivor. He underwent the stroke protocol. It came back negative. On February 18th, he saw Dr. Lilliana, who told him, all the tests come back, you did not have a stroke, something is going on with your cervical spine. Refer him for a neurosurgeon consult. He saw the neurosurgeon consult with Dr. DiPolio three days later on the 21st. Dr. DiPolio does the analysis, gives a causal connection opinion, recommends the cervical fusion. He also knows the fact that the MRI that was done at Alexia Brothers in February 2014 had two new findings that were different to the cervical MRI done in 2012. So he recommends the cervical fusion based on his condition of well-being. With respect to Dr. Murkowicz's opinion, I submit that the commission erred in placing reliance upon that opinion. Dr. Murkowicz performed a records review only. It was not an in-person Section 12 exam. There was no independent examination or history taken from Mr. Donovan. Dr. Murkowicz's opinion talks about, again, all the pre-existing medical orifice. We may have a pre-existing condition, but he had no treatment for six months, never missed work for his neck condition up until this accident. Dr. Murkowicz's opinion regarding whether or not the accident aggravated or accelerated Mr. Donovan's pre-existing condition is based entirely, he talks about other records, but his opinion on did this accident aggravate this is based off of a letter from counsel describing the accident that the work vehicle was only going 5 to 10 miles an hour. And Dr. Murkowicz specifically states, based on that mechanism of accident as described, that it would not have been sufficient enough to aggravate or accelerate his pre-existing condition to become symptomatic to need surgery. I submit that Dr. Murkowicz's opinion is flawed. And pursuant to the case law that I said in my brief, it cannot be relied upon because the basis of his opinion, meaning what happened, is incorrect. It's not supported by evidence. Well, I think he did a good job of pointing out flaws, alleged flaws in Dr. Murkowicz's opinion, but the arbitrator determined Murkowicz's medical opinion was more persuasive than those of Dr. Petoglio, and specifically the arbitrator noted that Dr. Petoglio's opinion was based on claimant's representation that his symptoms were exacerbated by the motor vehicle accident, whereas Dr. Murkowicz's opinion was based on the review of medical records and a more accurate description of the incident. So we have here the arbitrator articulating specific reasons to believe Murkowicz over the other doctor. So who's... The weight of the evidence and the credibility. What I'm submitting, and this court has used this phrase before in its opinions, apply common sense. I don't think the arbitrator in this decision with respect to Dr. Murkowicz's opinion in the evidence, it defies logic. A work vehicle can't only be going five miles an hour and go far enough off into the road that it has to be pulled out and towed. It can't build up enough snow under it to fill up an engine compartment and the wheel wells. Those are all undisputed. If a car's only going five miles an hour, that's not going to happen, and that's the basis of the arbitrator's determination in the commission. That's their interpretation of what happened, and I'm submitting that that's not substantiated by any of the evidence in this matter. Well, you can make that argument, but as Justice Hoffman alluded to earlier, we're supposed to presume that the commission has expertise in assessing medical efforts. But let me ask you this I just was noticing. Mayor, may I interrupt you before we lose that point? Are you saying that the only evidence that the vehicle is going five miles an hour or whatever it was in the range is from counsel's letter? Correct. To Dr. Murkowicz's medical records? Correct. Describing the accident? Correct. And that description by counsel is based on what? I don't know. And in their brief, when they agreed that the facts were undisputed, the appellee cites to Mr. Donovan's testimony about what happened. They cite to page 351 in the record, which is Mr. Donovan's testimony. Did Mr. Donovan talk about the speed? He testified that he was going approximately 40 to 45 miles an hour coming into town. There's a curve that comes in that reduces down to 30 miles an hour. While coming down in that bend, the wind blew up. It became whiteout conditions. He saw headlights coming at him. The only thing he thought he could do was stop. There's no evidence other than his driver's testimony that he was going at some speed other than 5 to 10 miles an hour? Correct. Other than the fact that his vehicle was fired up off into the ditch? Correct. And that was his testimony. There were no AT&T that produced any type of GPS records or anything with respect to the vehicle to show what way of speed it was going or anything like that. It was purely his testimony. Here's what happened. I went off the road and the boy was head-on collision. Was that testimony known or that statement known to counsel when they wrote the letter instructing the medical team? Well, I'm going to have to assume because this medical documentation was submitted to the employers back in March of 2014, which is when Dr. Petorio's records substantiating causation. Part of my request for penalties is that they did not get a Section 12 records report after demand for payment of benefits for nine months. So I have to assume between that point in time and when they did Dr. Murkowicz's opinion, I'm not sure they did an investigation and were aware. I mean, we had conversations about what was going on and, you know, what the position was. I mean. Let me see the comment. I'm going to finish your answer. Finish your answer. No. So with respect to just the rate of speed, the only thing other than for the speed was Mr. Donovan's testimony. Mr. White, the supervisor, and Mr. Donovan both agreed that when he showed up on site, the vehicle wasn't drivable. And if you look at the commission's decision, part of the reason why Justice Hoffman, where they find that he didn't get hurt in this incident, they focus on the fact that there's no damage to the vehicle. I don't have to show you that there's damage to the vehicle. They actually use that language. Because there's no damage to the vehicle, we don't find that the series of events as described to him could have occurred. Counsel, let me ask you this. If I could just briefly comment. The arbitrator determined that there was questions about the claimant's credibility regarding the severity of the accident, January 30th, and the arbitrator delineated nine separate and specific reasons for finding that. You're aware of that, you're not? Correct. Okay. And how do you respond to those nine reasons? Well, part of that's based upon the history that he didn't report anything to Alexiou Brothers on the 15th when he was in getting a stroke, that the wife didn't say anything. She disregarded all his testimony that he tried to report it three times, that he filled out the red book and that Mr. White refused to accept it because of, you know, and part of the issue with the red book that Mr. Donovan says he completed was if there's under five and a half hours damage to the vehicle, they don't do that. Everybody agrees and there's no dispute. The vehicle was towed twice and essentially what happened to the vehicle was the entire thing was compacted with snow and had to thaw out overnight. No one disputes that. I only point that out because one of the claimant's legitimate argument is that the arbitrator should be making specific findings. Here you have nine specific different findings regarding the claimant's credibility. That's a little bit unusual. Can we substitute our feelings about credibility for those of the commission and the arbitrator? Well, I don't think you can substitute. I don't think it's proper to substitute that, but what I'm saying is I think the arbitrator finding that, you know, making these credibility findings in the commission, there's a, you know, I submit that there's evidence of credibility finding. There's also evidence in the fact that one, as I said, part of her reliance or part of the determination of why he wasn't pregnant is she says that Mr. Sacco testified about the accident. He didn't. So that's part of the reasons that his testimony conflicts with Sacco's and I find Sacco and Eric White more reliable. Sacco never testified to that. And with respect to the other credibility findings, it has to do with not giving that history while he was in for a stroke and then the whole issue of that it was inferred because of the safety media that he was afraid he was going to get fired, so he went to see a doctor. He had already been told on the 18th, three days prior to this meeting about this argument with Mr. Sacco, to see the neurosurgeon. At that point it was set. He went and saw the doctor when he was supposed to see the doctor. So the fact that he saw the doctor on the same day, the commission finds him at fault and says he's not credible to basically, in my opinion, declare that he ran out. And I would submit it's a little bit hard when you have somebody who we don't deny. He had a preexisting condition. He treated for a year and a half. He had, with Dr. Prunskis, had spinal injections. Never any recommendation for surgery. He has this event, sees the doctor. Within 28 days after the accident, he's having a fusion from C3 through 7, I believe. You know, there's a difference between failing to establish there was an injury and failing to establish that there was a compensable injury. Now, there's absolutely no question that this man had some spinal problems. Their expert says his current condition, the condition he has when I examine him, has nothing to do with this accident. Or it gets fine as the current condition. But his treater, Bertragoli, or whatever his name was, also testified that the accident exacerbated those conditions. So the question becomes, is there an opinion in this record that the accident didn't exacerbate them, conceding that his current condition, it will be, is not causally related? Is there some evidence in the record? Or does the arbitrator rely on the fact that it took him over a month even to say he had any connection to this accident? I'm sorry, I didn't hear the first part of your question. Is there any evidence in the record that says that this driving the vehicle into the ditch did not exacerbate his existing condition? The only evidence that says that the accident, as described, did not, is Dr. Lerkovich's record review opinion, because he says that based on the mechanism of accidents described, a vehicle going at five miles an hour and going off into the shoulder in snow would not be of sufficient magnitude to exacerbate the underlying condition. That's my opinion. Correct. It should be, sir. But you're saying my contrary opinion is based upon facts not revealed or facts contrary to any fact, evidentiary fact, as to speak. Correct. But the basis of Dr. Lerkovich's opinion, his opinion is flawed because it's based on facts. Right, so that's the conclusion. Now, I think Justice Hawkinson's query is, what is there in evidence that supports an aggravation, compensable aggravation of the previous condition? Dr. Notorious, February 21st, office note, where he specifically gives an opinion that the motor vehicle accident, as described by his in-person history, Mr. Donovan, when going off the road severely, like we off the top of my head, severely exacerbated his pre-existing spinal condition. And how long was that after the incident? Three weeks. The accident was January 30th. He saw the neurosurgeon on February 21st. And how did the arbitrator deal with that or discount that? She discounted Dr. Lerkovich's opinion more reliably. Okay. Well, actually, you may be able to say all that. But there's a question. Yeah, and another thing. Did he say that the accident, as described, would not have been sufficient magnitude to permanently cause the aggravator to accelerate or exacerbate his pre-existing chronic cervical condition? He didn't say that. So as I understand your argument is that he said that based on a misunderstanding of the mechanics of the accident? Is that what you're saying? Correct. There is no evidence that he was traveling 5 to 10 miles an hour? Correct. And if the appellee in this case now agrees, and it's required to this court, that the facts of the accident are undisputed, and they cite to Mr. Donovan's testimony of what happened. We'll have time for questions. If there's anybody that's going to move, it would be nice to make an advantage of the cold weather. I'll try not to. If anybody wants to get outside. May it please the Court, my name is Counselor Mr. Clark. My name is Thomas Flaherty. I'm here on behalf of the appellant at L.A. Bell Telephone Company. What the commission found in its order was that Petitioner failed to establish that he sustained a compensable injury on January 3, 2014 for any causal connection between the alleged injury at work or any ongoing condition. Petitioner's burden of proof under the act requires him to show by preponderance of the evidence that he sustained an accidental injury arising out of the course of his employment. I cited the CISPRO decision in my brief. There, our Supreme Court held that to obtain compensation under the act, a claimant bears the burden of proving by preponderance of evidence. Let's make it simple. We know what CISPRO says. He's got a doctor that says the accident exacerbated an existing condition. You have a doctor that says no, it didn't. He bases that opinion upon the fact that the vehicle was only traveling 5 to 10 miles an hour and got stuck in the snow. His argument is the basis upon which your doctor has made his opinion is flawed and therefore the opinion is flawed. If the opinion is flawed and cannot be relied upon, then the only opinion in the record is his doctor's opinion that says it did exacerbate it. That's what this case is about. So tell me why your doctor's opinion was not flawed. Dr. Berthelot's opinion is not based solely on the mechanism of injury. He reviewed his pre-existing records. He reviewed the diagnostic and studies and looked at the comparison and said there was no change. And Dr. Berthelot, the surgeon, his opinion on causation is based on the petitioner's history to him that this event caused it. Which the commission found lacked credibility. They found that the petitioner lacked credibility. Portolio's contrary opinion that he's referring to is based upon testimony from the claimant that the commission and arbitrator found lacked credibility. Aren't you going to end up in the same place? You can't rely on the petitioner's burden of proof, so he hasn't been able to meet his burden of proof. Did he testify to the 40 or 50 miles per hour and began reducing speed as he approached the curb in the road? Did he testify to that? Yes, Your Honor. What evidence do we have that he was going 5 to 10 miles an hour? There is no evidence in the record before we have that other than Dr. Norkovic's statement that he was going 5 to 10 miles an hour. He ended up in the ditch. He ended up in the ditch. The issue before this court and what the commission found was that his condition of ill-being did not relate to that incident. We understand that the evidence established that his current condition of ill-being is not causally related to that work accident. That's easy. The question becomes, did the accident exacerbate the injury, although his current condition is not causally related? Did he suffer some compensable injury because of the accident? I would surmise to the court, no. His doctor says it exacerbated it. Your doctor says, no, it didn't. But your doctor makes his opinion prior to the fact that he was going 5 to 10 miles an hour. He wasn't. Not entirely on that. He also bases that on the review of his medical records, his pre-existing conditions. This goes to the issue of whether his current condition of ill-being is causally related. That's not a problem. That's not a problem. He can't make a case that his current condition is causally related in the face of Norkovic's testimony and his medical record and the diagnostic test. That's not really a problem. But the fact that he was in this accident, does that, the fact that his current condition of ill-being is not causally related, negates the fact that he suffered some injury. Because Norkovic said he didn't suffer a compensable injury. But there's no evidence that he suffered some injury. Then maybe the argument should be, as opposed to he failed to prove that he didn't sustain a compensable injury, that he failed to produce any evidence that he sustained any injury as a result. I would agree with that. In this case, the wording of the arbitrator's opinion that was adopted by the commission speaks in terms of compensable injury. It doesn't negate the argument that there was an injury. It is really a case where there was an incident without injury. That's really what it boils down to. And that's based on his, in large part, on his credibility. And the fact that the day after the work accident, as your Honor, Barabas pointed out, he did not, he reported at the morning tailgate that he walked away injury-free. When he goes in for the stroke-like symptoms, his history is, I was in my normal state of health. His wife makes no mention of this incident. When he sees Dr. Werner on February 18th, she says, I think you may have some cervical problems. He makes no mention of this incident. It's not until February 21st when he goes to see his surgeon on that afternoon, after he had already been subject to a disciplinary meeting, where he mentions, I went into the, I drove my vehicle into the ditch. And the arbitrator did not find that history, did not find that to be credible. And also in that same note, he says, now I'm going to apply for workers' compensation. He's familiar with applying for workers' compensation benefits because he previously had a workers' compensation claim. So he testified that he tried to use the Red Book to establish his report of an accident, and the arbitrator found that Mr. White's testimony was more compelling that the Red Book was used for property damage. And since there was no damage to the vehicle, there was no need for the Red Book. Not that he never reported an accident. Just to clarify for my own purposes, I know you're opposing counsel, to mention my question that the testimony that I was referring to, of the accident occurring when he was only doing 10 miles per hour, and when he walked away injury-free, that was apparently a Mr. White's testimony in the deposition with regard to what Donovan had stated at that meeting. Was there any challenge to that made? That's an unrebutted fact of the case. Okay, so the arbitrator can certainly take that into consideration. Thank you. I mean, I guess I'll just say, in conclusion, there's numerous facts which support the Commission's finding that Petitioner did not sustain a convincible injury arising out of and in the course of his employment, or any causal connection between the alleged injury and ongoing condition. And I would argue that there's sufficient facts in the records to support the Commission's decision, and I would ask that this Court affirm it. I have a question. Yes, sir. Yes, Your Honor. Was seeing Adam Fulton prior to this safety meeting, and was seen on the same day as the safety meeting, is that correct? Yes, Your Honor. And the surgeon said what? That's the first time in the history of the medical histories that Mr. Donovan mentions that I had a motor vehicle. It's described as a motor vehicle accident where I drove my truck into the ditch. That is the first time that he mentions in any of the medical histories. And the surgeon then writes, I believe this is an exasperation of a preexisting condition. And the Commission didn't, that's the opinion upon which the surgeon, but the Commission did not find that opinion reliable based on the fact that leading up to that and all the sequence of events, there's nothing to establish that he was having any of these complaints. If you go back and look at the entire record leading up to that, he never made any complaints at work. He continued to drive the same truck. When he went in for the stroke, he never gave that history. When he sees Dr. Lerner on February 18th, he never gives that history. It's not until after the disciplinary meeting, which on cross-examination, he couldn't recall what that meeting was about. He couldn't recall the phone call he had with Mr. Sacco, which led to issues of insubordination that needed to be addressed. He couldn't recall any of those. The only thing he could recall in this case is that I was driving my truck 40, 50 miles an hour, and I bounced around in it like a volleyball buck, and the Commission just didn't find his testimony reliable based on the entirety of the record, and that's how they came to this conclusion. Thank you. Counsel, your reply. It was in White's testimony that at the 10-8 meeting, your client stated that he was driving 10 miles an hour in a flat, clean area. Yeah, Mr. White testified that he had stated that at the 10-8 meeting that he was approximately going 10 miles an hour and saw headlights coming at him from 3 feet away. So it wasn't necessarily a question of difference between 40 miles an hour and 5 or 10 miles an hour. It could very well be a difference between 10 miles an hour or 5 to 10 miles an hour. Between who said what? I guess I don't understand your question. Yeah, if you believe me. If you believe Mr. White, the vehicle was only going 5 to 10 miles an hour. And again, If you believe Mr. White, the claimant said it was only going 10 miles an hour. That's what White said. Which contradicts Mr. Donovan's testimony at trial, which contradicts what the employer now admits in their response brief. These are the series of events that happened. You're saying that these facts are undisputed in your response brief, and you cite to Mr. Donovan's testimony as the events that occurred. And real quickly, with Dr. Murkowicz's opinion, so your honors are clear, on page 5 of his report, and this is the quote that he notes he received, correspondence from the employer which indicated, quote, the vehicle was traveling at approximately 5 to 10 miles per hour due to traffic, secondary to snow. Your correspondence also indicates that the patient's vehicle got stuck in the snow and that subsequently there was no evidence of damage to the vehicle. The mechanism of events described would not have been of sufficient magnitude to permanently cause, aggravate, accelerate, or exacerbate Mr. Donovan's preexisting cervical condition. The commission in this decision says, quote, that several facts are disputed when they do consider the testimony of Mr. White and Petitioner. Mr. Donovan, they state that Petitioner's work truck had to be retrieved by a tow truck from the ditch and placed back on the side of the road. However, the commission went on to state, and this is the cross-segmented thing I believe here, that there's simply no evidence of any mechanical problems as a result of the January 30th incident requiring repairs beyond thawing off snow. Petitioner's contention that he was involved in the vehicle incident is sufficient enough to bounce him around the cab of a truck like a bucking bronco at a speed of 110 miles is unlikely. That's how the commission, so to your question, Justice Holbrook, to have evidence of going five, they affirm, because they think just because there's no damage to a vehicle that it only had to be going five to ten miles an hour. And I submit, as I stated earlier, that that ignores common sense. I'm sure your honors have gone off the road at times in the course of your life in snow, and you can go off of the road in a snowstorm and get bounced around in your car, and the outside of the car is not damaged. What usually happens most of the time, if you're lucky, something like this where the snow gets built up and a car has to be towed out. Dr. Borkman's opinion, as I state, and the reason why I think the commission's decision is against the manifest way and the evidence with respect to a medical causal relationship analysis is that it's flawed. He bases his opinion off of a letter from opposing counsel and or the employer that here's what happened, and based on this series of events, that's not sufficient enough to exacerbate or permanently accelerate that condition. There's no evidence to that respect as far as what actually happened, what Mr. Donovan testified to with respect to the vehicle. With respect to Mr. Flurry's comment regarding, again, the treatment. I mentioned this before. There was never any dispute. We agreed. This incident occurred on January 30th. The first time he saw a doctor was the 15th. Commission found fault with him because he did not tell the doctors or Lexington brothers about this incident. Again, I submit. Well, there's a little one here. What's that? He never told his employer either. He had meetings with his supervisor. He never said he was injured. He testified that he had told Mr. White on three separate occasions. Mr. White admitted or Mr. White testified that Mr. Donovan's discrepancy between Mr. White and Mr. Donovan's testimony and whether or not he did or did not attempt to get him a leg book,  Mr. White said he never gave it to me, but even if he did, I wouldn't have taken it because it was not more than $500 damage to the vehicle. Mr. White also testified that because your client didn't tell him he was injured. No, Mr. White testified that in his opinion, Mr. Donovan didn't have an accident, so he wasn't doing anything with it anyway. Mr. White made his own unilateral determination in this case that Mr. Donovan did not have an accident. Thank you, Your Honor. Thank you, counsel, both for your arguments in this matter. We take it under advisement that the ridiculous position shall be issued. The court will stand in adjournment. Subject to call.